1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

NATHANIEL MULLINS,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

Defendant.

Case No. C13-1887-RSM-BAT

**REPORT AND
RECOMMENDATION**

13   Nathanial Mullins seeks review of the denial of his Supplemental Security Income and

14   Disability Insurance Benefits applications.  He contends the ALJ erred by rejecting the opinions

15   of three examining doctors and two treating nurse practitioners and by finding Mr. Mullins not

16   fully credible.  Dkt. 18.  For the reasons discussed below, the Court recommends the

17   Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

18   **BACKGROUND**

19   Mr. Mullins was 45 years old on his alleged onset date and 49 years old as of the date of

20   the ALJ's decision.  Tr. 22.  He has a high school education and has worked as a laborer and

21   construction worker and as a shipping and receiving clerk.  Tr. 227.  On February 23, 2011, he

22   applied for benefits, alleging disability as of July 1, 2008; he later amended his alleged onset date

23   to March 29, 2010.  Tr. 34, 199, 206.  His applications were denied initially and on

REPORT AND RECOMMENDATION - 1

1   reconsideration.  Tr. 102, 122, 130.  After conducting a hearing, the ALJ issued a decision on

2   May 17, 2012, finding Mr. Mullins not disabled.  Tr. 12-23.  As the Appeals Council denied Mr.

3   Mullins's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

4                                   **THE ALJ'S DECISION**

5           Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Mullins had

6   not engaged in substantial gainful activity since the alleged onset date; he had the following

7   severe impairments: affective disorder (depressive disorder), anxiety disorder, substance

8   addiction disorder, and hepatitis C; and these impairments did not meet or equal a listed

9   impairment.[2]  Tr. 14-15.  The ALJ found that Mr. Mullins had the residual functional capacity to

10  perform medium work except he is able to climb ladders, ropes, and scaffolds occasionally; he

11  must avoid concentrated exposure to hazards such as machinery and heights; in order to maintain

12  concentration, persistence, and pace in an ordinary work setting on a regular and continuous

13  basis and to remain within customary tolerances of employers' rules regarding sick leave and

14  absences, he could perform work involving 1 to 3 steps that he can learn after a short

15  demonstration; in order to respond appropriately to coworkers and supervisors, he could interact

16  with supervisors occasionally, deal with occasional work setting changes, and work in proximity

17  to coworkers except that he could not work in a team or in a cooperative effort; and he is able to

18  perform work that does not require direct service to the general public or frequent contact with

19  the general public as an essential element of the work process, although incidental contact with

20  the general public is not precluded.  Tr. 16-17.  The ALJ found that Mr. Mullins was able to

21  perform his past relevant work as a shipping and receiving clerk and, in the alternative, that he

22  could perform other work that exists in significant numbers in the national economy.  Tr. 21-23.

23  _____
[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1    The ALJ therefore concluded that Mr. Mullins was not disabled.  Tr. 23.

2                                  **DISCUSSION**

3        **A.    Examining doctors' opinions**

4              Mr. Mullins argues that the ALJ erred by rejecting the opinions of examining doctors

5    Romalee Davis, M.D., James Hopfenbeck, M.D., and James Hughes, M.D.  Dkt. 18 at 5-10.  In

6    general, the ALJ should give more weight to the opinion of an examining doctor than to that of a

7    non-examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where it is not

8    contradicted by another doctor, the ALJ may reject an examining doctor's opinion only for "clear

9    and convincing reasons."  *Id.* at 830-31.  Where contradicted, the ALJ may not reject an

10   examining doctor's opinion without "specific and legitimate reasons" that are supported by

11   substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502

12   (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts

13   and conflicting evidence, stating her interpretation of the facts and evidence, and making

14   findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than

15   offer her conclusions; she must also explain why her interpretation, rather than the examining

16   doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing

17   *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

18          *1.    Dr. Davis*

19          Dr. Davis examined Mr. Mullins in May 2011.  She noted his difficulties during the

20   mental status examination and opined: "It is difficult to get a real sense of this man's problem.

21   He appears to want to present himself well and he also appears to have some trouble thinking."

22   Tr. 433.  She noted he had been taking Sertraline for maybe a year.  She diagnosed depressive

23   disorder NOS, anxiety disorder NOS, alcohol abuse in questionable long-term full remission, and

1  polysubstance abuse in long-term full remission.  She assigned a global assessment of

2  functioning (GAF) score of about 50, indicating serious symptoms or a serious impairment in

3  social, occupational, or school functioning.  Am. Psychiatric Ass'n, Diagnostic and Statistical

4  Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).  She opined:

5  > This man does not appear to have been doing well for some time but at the same
   > time he wants to appear to me as if he is doing well.  He did not report many

6  > symptoms but he did not appear to be thinking so well either.  Can't say for sure
   > what is going on. . . . Any task requiring complex thought looks like it would be

7  > beyond him.

8  Tr. 433-36.

9       The ALJ agreed with Dr. Davis's opinion and gave it significant weight, although the

10  ALJ found that the opinion did not provide much detail about particular limitations.  The ALJ

11  found that Dr. Davis "indicated only that the claimant could not perform complex tasks,

12  suggesting that he was capable of simple tasks, simple work decisions, repetitive activities, and

13  other qualities associated with simple tasks."  And the ALJ found that Dr. Davis did not

14  comment on Mr. Mullins's social functions.  The ALJ concluded that Mr. Mullins's residual

15  functional capacity was consistent with Dr. Davis's opinion, which in turn was consistent with

16  Mr. Mullins's activities, improvement with treatment, and other factors the ALJ discussed with

17  respect to credibility.  Tr. 19-20.

18       Mr. Mullins argues that the ALJ's interpretation of Dr. Davis's opinion "did not

19  constitute a properly specific rejection."  He points to specific results from the mental status

20  exam, such as the fact that he could not name the states bordering Washington and could only

21  recall one out of three items, and the GAF score of 50.  He asserts, "On the whole, the opinion

22  established Plaintiff's inability to sustain the rigors of the regular work world, 8 hour days, and

23  40 hour weeks."  Dkt. 18 at 6-7.

REPORT AND RECOMMENDATION - 4

The opinion did no such thing.  Mr. Mullins's assertion about what the opinion "established" is merely an alternate interpretation of it.  The ALJ incorporated the only concrete limitation Dr. Davis opined, an inability to perform tasks requiring complex thoughts.  Any further interpretation of the opinion was a matter of weighing and interpreting the evidence, a task which is the sole province of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion.  *Id*.  No matter how strenuously Mr. Mullins disagrees with it, the Court may not disturb the ALJ's assessment of Dr. Davis's opinion.

Separately, the ALJ considered GAF scores of 50 or less that Dr. Davis and other sources assigned to Mr. Mullins.  The ALJ found that GAF scores do not reflect all of a person's activities; incorporate external factors not relevant to a disability determination, such as homelessness, unemployment, and financial hardships; and may incorporate a claimant's subjective complaints, meaning that a lack of credibility undermines the accuracy of the scores. The ALJ therefore considered the GAF scores, but found the scores not helpful in determining specific limitations to Mr. Mullins's work capacity.  The ALJ also found that Mr. Mullins's lack of credibility and the presence of external factors, such as legal problems involving custody of his children, undermine the validity of the scores.  Tr. 21.

As a general matter, a GAF score is not dispositive of mental disability for social security purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings.")); *see also Gutierrez v. Astrue*, No. 12–cv–1390 MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) ("A GAF score of 50 does not

necessarily establish an impairment seriously interfering with the claimant's ability to perform basic work activities.").  But a GAF score assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the record, including medical source opinions.  20 C.F.R. §§ 404.1545(a), 416.945(e).  As such, the regulations indicate that GAF scores are relevant evidence that should be considered and can only be rejected for specific reasons.

The ALJ's generic reasons why GAF scores are not helpful were not valid reasons to reject the opinions out of hand.  But the ALJ also gave specific reasons for rejecting the GAF scores assigned to Mr. Mullins, that his lack of credibility and the presence of external factors undermine the validity of the score.  Dr. Davis considered Mr. Mullins's poverty as well has his history of a broken jaw, ulcers, and lung removal as a child when evaluating his GAF score.  Tr. 436.  And, as discussed below, the ALJ properly found Mr. Mullins not fully credible.  These were valid reasons to discount the GAF scores.

Mr. Mullins also asserts that if the ALJ "found Dr. Davis's opinion to be deficient because this doctor did not specify many limitations, such as social limitations, the ALJ should have recontacted Dr. Davis."  Dkt. 18 at 7.  An ALJ's duty to develop the record is triggered only where the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Dr. Davis's opinion is neither ambiguous nor inadequate to allow for proper evaluation.  The ALJ was not required to recontact Dr. Davis.  The ALJ did not err in evaluating Dr. Davis's opinion.

2.   *Dr. Hopfenbeck*

Dr. Hopfenbeck examined Mr. Mullins in July 2010.  He diagnosed major depression,

REPORT AND RECOMMENDATION - 6

moderate, recurrent; panic disorder with agoraphobia; and polysubstance dependence in sustained, full remission; and assigned a GAF score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning.  DSM-IV at 34.  He opined that Mr. Mullins had mild to moderate cognitive limitations and marked to severe social limitations, stating that Mr. Mullins "can't stay on a job due to severe anxiety."  He noted that an antidepressant helped Mr. Mullins's mood some, but he stopped taking it when his benefits ran out.  Tr. 306-11.

The ALJ gave Dr. Hopfenbeck's opinion little weight because he evaluated Mr. Mullins at a time when he was not taking medication.  The ALJ noted that Dr. Hopfenbeck stated Mr. Mullins would improve with anti-depressants but never had the opportunity to reassess him after July 2010.  Tr. 20.

Mr. Mullins argues that this reason was not specific and legitimate in light of Dr. Davis's opinion authored a year later, when Mr. Mullins was taking medication.  Mr. Mullins points to what he asserts are similarities between the opinions and asserts that Dr. Davis "corroborated Dr. Hopfenbeck's earlier opinion and eliminated the one reason the ALJ gave to reject Dr. Hopfenbeck's opinion."  Dkt. 18 at 9.  Again, Mr. Mullins merely proposes an alternative weighing and interpretation of the two opinions.  The ALJ was not required to interpret one opinion in a manner that negated her reason for rejecting the other.

Mr. Mullins also maintains that the ALJ improperly punished him for his inability to afford medication.  Dkt. 23 at 4-5.  The ALJ cannot use a claimant's failure to obtain treatment he cannot afford to support an adverse credibility determination.  *Orn*, 495 F.3d at 638.  But that is not what the ALJ did here.  Rather, the ALJ gave greater weight to the medical opinion that considered Mr. Mullins's functioning when taking medication.  Impairments that can be

1   effectively controlled with medication are not disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*,

2   439 F.3d 1001, 1006 (9th Cir. 2006).  This was a permissible weighing of the two opinions.

3   Because the ALJ's interpretation of the interplay between the two opinions was rational, this

4   Court should not disturb it.

5           *3.      Dr. Hughes*

6           Dr. Hughes examined Mr. Mullins in March 2010.  He diagnosed major depressive

7   disorder, recurrent, moderate and polysubstance dependence in remission, and assigned a GAF

8   score of 39, indicating some impairment in reality testing or communication or major impairment

9   in several areas, such as work or school, family relations, judgment, thinking, or mood.  DSM-IV

10  at 34.  He opined that Mr. Mullins had no cognitive limitations, but moderate to severe social

11  limitations, including severe limitations on his ability to maintain appropriate behavior in a work

12  setting due to psychomotor retardation.  Mr. Mullins was not taking medication at the time of Dr.

13  Hughes's evaluation.  Dr. Hughes opined that treatment would likely restore work capacity.  Tr.

14  312-17.

15          The ALJ found that in light of subsequent treatment notes, Dr. Hughes was correct in his

16  assessment of Mr. Mullins's likely response to medication, but Dr. Hughes never reassessed him

17  after March 2010.  The ALJ therefore gave Dr. Hughes's opinion little weight with respect to

18  determining Mr. Mullins's residual functional capacity after March 2010.  Tr. 20.

19          Mr. Mullins again argues that the ALJ's reason for rejecting Dr. Hughes's opinion was

20  invalid in light of Dr. Davis's opinion authored when Mr. Mullins was taking medication.  Dkt.

21  18 at 10.  But again, Mr. Mullins bases his argument on an alternative interpretation of the

22  evidence that the ALJ was not required to accept.  The ALJ rationally interpreted and weighed

23  the opinions.  This Court should not disturb that assessment.

REPORT AND RECOMMENDATION - 8

**B.      Treating nurse practitioners' opinions**

Mr. Mullins argues that the ALJ erred by rejecting the opinions of treating nurse

practitioners Mary Montgomery, ARNP, and Sonia Nikolova, ARNP.  Dkt. 18 at 10-12.  Nurse

practitioners are not acceptable medical sources who can give medical opinions.  *See* 20 C.F.R.

§ 404.1513(a).  The ALJ may evaluate opinions of other medical sources using the same factors

used to evaluate medical opinions of acceptable medical sources.  Social Security Ruling 06-03p;

*see also* 20 C.F.R. § 404.1527(d).  But the ALJ may give less weight to opinions of non-

acceptable medical sources than to those of acceptable medical sources.  SSR 06-03p.  The ALJ

must give specific, germane reasons for rejecting opinions from other sources that are not

acceptable medical sources.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

*1.     Ms. Montgomery*

Ms. Montgomery evaluated Mr. Mullins in March 2011.  She diagnosed major depressive

disorder, alcohol dependence, cannabis dependence, and cocaine dependence in full sustained

remission, and assigned a GAF score of 42.  DSM-IV at 34.  She opined that Mr. Mullins had

marked difficulty with complex tasks, learning, judgment, routines, coworker interaction, public

interaction, and appropriate behavior.  She opined that his medications were only slightly

effective, symptoms persisted on his current medications, and "the extent and severity of

symptoms is unlikely to be decreased to the level where gainful employment is possible."  Tr.

464-69.

The ALJ gave her opinion little weight.  The ALJ found that her opinions regarding his

functional limitations were not specific, stating that a "marked limitation, by itself, is not

helpful."  Tr. 20.  An ALJ may reject conclusory opinions.  *Bayliss v. Barnhart*, 427 F.3d 1211,

1216 (9th Cir. 2005).  But along with each marked limitation, Ms. Montgomery included a

1  description of the limitation, such as "easily frustrated, quickly becomes hopeless, low energy,

2  and poor concentration" with the marked limitation in the ability to learn new tasks.  Tr. 467.

3  Ms. Montgomery did more than merely state Mr. Mullins was markedly limited.  As the

4  Commissioner concedes (Dkt. 22 at 10), this was not a valid reason to reject her opinion.

5        The ALJ found that Ms. Montgomery's conclusion that Mr. Mullins could not be

6  gainfully employed was a determination reserved to the Commissioner.  Tr. 20.  An opinion on

7  an issue reserved to the Commissioner, such as an opinion that a claimant is "disabled" or

8  "unable to work," is not entitled to any special significance.  20 C.F.R. § 404.1527(d),

9  416.927(d).  The ALJ properly rejected this aspect of the opinion.

10       The ALJ found that Ms. Montgomery was not an acceptable medical source and so gave

11  greater weight to the opinions of Dr. Davis and Dr. Eisenhauer, given their credentials.  Tr. 20.

12  The fact that an opinion is from an acceptable medical source is a factor that may justify giving

13  that opinion greater weight than an opinion from a non-acceptable medical source, although it is

14  possible for an ALJ to give more weight to the opinion of the non-acceptable source.  SSR 06-

15  03p.  The ALJ did not err by giving more weight to the medical opinions than those of Ms.

16  Montgomery.

17       And the ALJ found that Ms. Montgomery's opinion was not consistent with her treatment

18  notes, which showed much more than a slight improvement with medication, and that it was not

19  consistent with her own evaluation, where she indicated that Mr. Mullins's anxiety and panic

20  episodes stopped with medication and that he had largely normal mental status findings.  Tr. 20-

21  21.  An ALJ may reject an opinion where there is a discrepancy between the statement assessing

22  a patient's limitations and the clinical notes, recorded observations, and other opinions.  *Bayliss*,

23  427 F.3d at 1216.  This was a valid reason for rejecting Ms. Montgomery's opinion.

REPORT AND RECOMMENDATION - 10

1    Although the ALJ gave one invalid reason for rejecting Ms. Montgomery's opinion, the

2    ALJ provided several other germane reasons for rejecting the opinion.  Accordingly, the Court

3    finds that the ALJ's assessment of the opinion should not be disturbed.  *See Stout v. Comm'r,*

4    *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error may be harmless where the mistake

5    was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate decision).

6        *2.    Ms. Nikolova*

7        Ms. Nikolova evaluated Ms. Mullins in March 2012.  She diagnosed major depressive

8    disorder, alcohol dependence in early partial remission, and cocaine abuse in sustained full

9    remission, and assigned a GAF score of 45.  She opined that Mr. Mullins had marked or severe

10   limitations in complex instructions, learning, judgments, routines, coworker interaction, public

11   interaction, workplace pressure, and appropriate behavior.  She opined that Mr. Mullins would

12   not be able to perform gainful work on a sustained basis.  Tr. 471-77.

13       The ALJ gave Ms. Nikolova's opinion little weight because she was not an acceptable

14   medical source like Dr. Davis or Dr. Eisenhauer, and because Ms. Nikolova's opinion was

15   inconsistent with Mr. Mullins's activities, such as his ability to live on his own independently.

16   Tr. 21.  An ALJ may give less weight to an opinion that is inconsistent with other evidence in the

17   record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ

18   rationally interpreted Mr. Mullins's daily activities as inconsistent with the marked and severe

19   limitations opined by Ms. Nikolova.  This was a germane reason to reject the opinion.  The ALJ

20   did not err in evaluating Ms. Nikolova's opinion.

21   **C.    Mr. Mullins's credibility**

22       Mr. Mullins argues that the ALJ gave insufficient reasons to find him not fully credible.

23   Dkt. 18 at 12-13.  The ALJ did not find that Mr. Mullins was malingering.  Thus, the ALJ was

REPORT AND RECOMMENDATION - 11

required to provide clear and convincing reasons to reject his testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  An ALJ does this by making specific findings supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found that Mr. Mullins made inconsistent statements, particularly about his substance use.  Tr. 18-19.  An ALJ may discredit a claimant's subjective complaints by identifying inconsistencies or contradictions in his statements or other relevant evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir. 1995).  The ALJ noted, for example, that treatment notes show a significant history of drug and alcohol use, including as recent as January 2012, yet Mr. Mullins testified at the hearing, in April 2012, that he had not used any substances during the past year.  Tr. 18.

Mr. Mullins asserts, "Although Plaintiff was somewhat inconsistent, all of these reasons wash out in light of Dr. Davis' opinion, the key to the ALJ's decision."  Dkt. 18 at 12.  Plaintiff essentially asks the Court to ignore a valid reason for finding him not credible in favor of his own interpretation of the evidence.  That the Court cannot do.  It is the province of the ALJ to determine credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court may not substitute its judgment for that of the Commissioner.  *Thomas*, 278 F.3d at 954.  The Court will not disturb the ALJ's credibility finding based on an alternative interpretation of the evidence.

Moreover, the ALJ gave other valid reasons for finding Mr. Mullins not fully credible, which Mr. Mullins does not challenge.  The ALJ found that Mr. Mullins's condition improved with treatment.  Tr. 18.  The effectiveness of medications is a factor the ALJ may consider in

assessing credibility.  20 C.F.R. § 404.1529(c)(3).  And the ALJ found that Mr. Mullins's

activities were inconsistent with his allegations.  Tr. 18.  Contradictions between a claimant's

reported activities and his asserted limitations are an issue of credibility.  *Morgan v. Comm'r of*

*Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ gave clear and convincing reasons, supported by substantial evidence, to reject

Mr. Mullins's credibility.  The Court therefore should not disturb the ALJ's credibility finding.

## CONCLUSION

The Commissioner's decision was free of harmful legal error and supported by

substantial evidence.  Accordingly, the Court recommends that the Commissioner's decision be

**AFFIRMED** and this case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to

this Report and Recommendation must be filed and served no later than **July 11, 2014**.  If no

objections are filed, the matter will be ready for the Court's consideration on that date.  If

objections are filed, any response is due within 14 days after being served with the objections.  A

party filing an objection must note the matter for the Court's consideration 14 days from the date

the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The

failure to timely object may affect the right to appeal.

DATED this 27th day of June, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13